UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SAEID ZAREI,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of<br>Otay Mesa Detention Center, et.al.,<br><br>                              Respondents. | Case No.:  26-cv-02335-GPC-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Currently before the Court is Petitioner Saeid Zarei ("Petitioner")'s petition for a writ of habeas corpus. This is Petitioner's second petition before this Court. The Court granted the first petition in part and ordered Respondents to provide Petitioner with a bond hearing. *See Zarei v. LaRose*, No. 26-CV-0308-GPC-MMP, 2026 WL 252585, at *7 (S.D. Cal. Jan. 30, 2026). Petitioner now argues that the bond hearing he received was legally and constitutionally inadequate. ECF No. 1 at 2. For the reasons set forth below, the Court GRANTS the petition. Respondents are ORDERED to release Petitioner within forty-eight (48) hours subject to reasonable conditions of supervision. The Court additionally VACATES the hearing set for May 22, 2026.

/ / /

/ / /

## BACKGROUND

Petitioner was born into a Muslim family in Iran. *Zarei*, 2026 WL 252585 at *1. As an adult, he secretly converted to Christianity and participated in an underground Christian worship movement. *Id*. After Petitioner's conversion was disclosed to Iranian authorities, he was arrested and tortured. *Id*. Petitioner fled Iran and entered the United States on March 27, 2025 to seek asylum. *Id*. He was immediately arrested by Border Patrol and expressed a fear of return to Iran. *Id*. Despite his assertion of fear, Petitioner was not given a credible fear interview or placed in removal proceedings for seven months—instead, he was transferred between multiple immigration detention facilities in California, Arizona, Louisiana, and Mississippi. *Id*. Finally, in October 2025, he received a positive credible fear determination and was placed in removal proceedings. *Id*. He is currently awaiting his final merits hearing. ECF No. 10 at 2.

On January 18, 2026, Petitioner filed a habeas petition before this Court alleging that his detention without a bond hearing had become constitutionally prolonged. *Id*. This Court granted the petition and ordered that Petitioner be afforded a "prompt and individualized bond hearing, where Respondents must justify his continued detention 'by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.'" *Zarei*, 2026 WL 252585 at *6 (quoting *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025).

On February 4, 2026, Petitioner received a bond hearing. ECF No. 7 at 2; ECF No. 5, Ex. B. During the bond hearing, the immigration judge ("IJ") initially asked Petitioner's counsel to "tell [him] why the [Petitioner] is not a danger to the community, persons or property, and why [Petitioner] is not such a flight risk that bond should not be granted. ECF No. 10-2 at 5. Petitioner's counsel informed the IJ that this Court had placed the burden on the government to establish whether Petitioner would likely flee or be a danger to the community. *Id*.

After being made aware of this Court's order, the IJ turned to the Respondents. Respondents conceded that they did not see any criminal history for Petitioner and did not

26-cv-02335-GPC-MMP

"see any factors pointing to his possibly being a danger to the community." *Id*. at 7. As for the flight risk factor, Respondents pointed to the fact that Petitioner had entered without inspection and that Petitioner did not avail himself of the immigration system through other avenues of relief.

Petitioner, in turn, argued that entering without inspection did not render him a flight risk because the CBP One app was inoperable by the time he entered and "people that are fleeing harm or persecution enter countries illegally and may not be familiar with the rules and regulations and how they are supposed to avail themselves of the immigration system in seeking asylum." *Id*. at 8.

The IJ then proceeded to ask about Petitioner's sponsor. The IJ noted that he was not provided any way to prove that the sponsor and Petitioner were related and that the sponsor made a low income of $25,000 to $30,000 a year. *Id*. at 8-9. The IJ additionally asked about her living arrangements, such as whether she lived in a home or an apartment and whether the sponsor supported others within her household. *Id*. at 9. He finally asked about a previous apartment address, which Respondents highlighted as a concern given the sponsor's income and that the previous address was in a more expensive area. *Id*. at 10.

Later that same day, the IJ denied Petitioner bond. ECF No. 10 at 4. The order indicates that bond was denied because Petitioner was a "flight risk" and cites *Matter of Dobrotvorskii*, 29 I&N Dec. 211 (BIA 2025). *Id*., Ex. E.

Petitioner now argues that his continued detention without an adequate bond hearing violates his Fifth Amendment due process rights. ECF No. 1 at 7. Petitioner seeks an order granting his release. *Id*. at 8.

## DISCUSSION

Respondents oppose Petitioner's petition solely on the grounds that Petition failed to exhaust his administrative remedies. *See* ECF No. 7. Respondents do not otherwise engage with the merits of Petitioner's arguments regarding the validity of Petitioner's initial bond hearing. *Id*.

26-cv-02335-GPC-MMP

The Court will first address the questions of jurisdiction and exhaustion. Then, it will consider if Petitioner's hearing comported with the law and due process.

## I.  Jurisdiction

The Court recognizes that Respondents do not challenge the petition on the grounds that this Court lacks jurisdiction. However, the issue of jurisdiction has arisen in similar habeas petitions within this Circuit. *See, e.g.*, *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026); *Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026). Thus, the Court will briefly address the issue.

"In general, the Court does not have jurisdiction to review discretionary bond decisions." *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (citing 8 U.S.C. § 1226(e)). However, while an IJ's discretionary judgment may not be judicially reviewed pursuant to 8 U.S.C. § 1226(e), district courts retain habeas jurisdiction over "constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). *See also Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1031 (W.D. Wash. 2019) ("Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error."). Such jurisdiction extends to "mixed questions" involving application of law to facts. *N.A. v. Warden*, No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *6 (C.D. Cal. Feb. 20, 2026), *report and recommendation adopted sub nom. N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (citing *Martinez v. Clark*, 124 F. 4th 775, 783 (9th Cir. 2024)). Indeed, "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Id.* (internal quotation marks and citation omitted). Because Petitioner argues that

the process he was provided at his bond hearing was legally and constitutionally deficient, this Court retains jurisdiction to review Petitioner's claims.

## II.    Exhaustion

Habeas claims are generally accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims"). A district court may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

When a petitioner does not exhaust prudentially required administrative remedies, the district court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Id.* (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). However, a court may waive the prudential exhaustion requirement if: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

The Court need not determine whether the *Puga* factors weigh in favor of an exhaustion requirement in this case. This is because, even if exhaustion is required, Petitioner successfully meets several *Laing* factors such that waiver is warranted. Specifically, the pursuit of administrative remedies would not be adequate and would cause irreparable harm and hardship to Petitioner.

As to the first factor, the Court acknowledges the BIA's general subject-matter expertise in individual immigration bond decisions. *Aden v. Nielsen*, No. C18-1441RSL,

26-cv-02335-GPC-MMP

2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019). However, Petitioner raises a constitutional challenge to the adequacy of his bond hearing, which is better suited to review by the federal courts. *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026); *Scott v. Wamsley*, No. 2:25-CV-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, No. 2:25-CV-1819, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (finding that due process and statutory challenge to continued detention is "fundamentally a question of law"). Thus, the first factor leans in favor of waiving prudential exhaustion.

Turning to the third factor, Petitioner argues that, if he is required to exhaust his appeal with the BIA, he will suffer irreparable harm in the form of continued detention without a legally adequate opportunity to demonstrate his entitlement to bond. ECF No. 10 at 13; *see Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10 (C.D. Cal. Mar. 5, 2026). Respondents argue only that continued detention after the denial of a bond hearing alone cannot constitute irreparable injury such that exhaustion should be waived. ECF No. 7 at 5 (citing *Reyes v. Wolf*, No. C-20-0377-JLR, 2021 WL 662659, at *3 (W.D. Wash. Feb. 19, 2021) *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021)).

However, the Respondents fail to acknowledge that several courts—including those in this Circuit—have found that continued detention after a potentially legally inadequate hearing may constitute such irreparable harm. *W.T.M.*, 2026 WL 262583, at *3 (finding irreparable injury where BIA review exceeded 200 days and "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals." (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *5 n.7 (E.D. Cal. Jan. 29, 2026) (holding petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it take to have an appeal decided."); *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5

26-cv-02335-GPC-MMP

(E.D. Cal. Mar. 13, 2026) (adopting reasoning of *C.A.R.V.*); *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, --- F. Supp. 3d ---, 2025 WL 3466312, at *6 (D.R.I. Dec. 3, 2025) (finding irreparable injury in the form of continued detention where petitioner would likely face several additional months of detention while awaiting BIA review); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (waiving exhaustion requirement where "delays inherent in the [BIA review] process ... would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings"); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 ("Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."). Thus, while continued detention alone may not constitute irreparable injury, the inherent delays in the current appeals process support a finding that Petitioner will suffer irreparable injury if he is required to wait for BIA adjudication of his bond denial.

Additionally, "Petitioner has presented evidence unique to him, that, while not an independent basis for relief, supports a finding that his continued detention pending a potentially months-long BIA appeal of the IJ's bond denial decision would risk continued irreparable harm." *W.T.M.*, 2026 WL 262583, at *3. Specifically, Petitioner cites his poor mental and physical health, including severe hair loss, skin problems, deteriorating eyesight, anxiety, panic attacks, and depression. ECF No. 1 at 7. These conditions could risk continued irreparable harm if detention is sustained.

The combination of evidence in this case—including evidence (1) that the BIA is unlikely to provide Petitioner with adequate relief and (2) that Petitioner would likely face lengthy continued detention as his health worsens—suggest that waiver of exhaustion is appropriate. The Court thus exercises its discretion to waive the exhaustion requirement in this case.

/ / /

/ / /

### III.    Sufficiency of Petitioner's Bond Hearing

Having found that Petitioner need not exhaust his administrative remedies, the Court now turns to the question of whether the bond hearing provided to Petitioner was legally and constitutionally adequate.

### A. Legal Standard

"In light of *Martinez*, courts may review an IJ's finding that an alien poses a flight risk for abuse of discretion." *Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at \*10 (C.D. Cal. Feb. 9, 2026) (citing 124 F. 4th at 784). "'[A]buse of discretion' review does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at \*5 (E.D. Cal. Mar. 13, 2026) (quoting *Martinez*, 124 F. 4th at 784) (alterations in original). Thus, "the Court must decide whether the IJ 'relied upon proof that—as a matter of law—could not establish'" the conclusion drawn. *Kharis v. Sessions*, No. 18-CV-04800-JST, 2018 WL 5809432, at \*5 (N.D. Cal. Nov. 6, 2018) (quoting *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at \*3 (W.D.N.Y. Nov. 29, 2017)). The scope of this Court's review remains the same whether the government or petitioner bears the burden of proof. *Id.* Lastly, "the reviewing court must bear in mind that 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'" *Loba L.M.*, 2026 WL 710307, at \*5 (quoting *Hernandez*, 872 F.3d at 981).

Because the Court is tasked with determining whether the IJ applied the correct legal standard, the Court starts with identifying the legal standard at issue. Here, the Court required in its previous order "a prompt and individualized bond hearing, where Respondents must justify Petitioner's continued detention 'by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.'" *Zarei v. LaRose*, No. 26-CV-0308-GPC-MMP, 2026 WL 252585, at \*6 (S.D. Cal. Jan. 30, 2026) (quoting *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at \*4 (S.D. Cal. Nov. 12, 2025)).

"To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* (quoting *Guerra*, 24 I. & N. Dec. at 40). An IJ has "broad discretion" in weighing these factors, "as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. Indeed, an IJ may "consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" *Garcia*, --- F. Supp. 3d ---, 2025 WL 3466312, at *8 (quoting *Guerra*, 24 I. & N. Dec. at 40-41). Though what constitutes flight risk is "malleable and involves agency discretion," it is "still a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Martinez*, 124 F. 4th at 783 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024).

**B. Petitioner's Bond Hearing Was Legally and Constitutionally Deficient**

The Court concludes that the IJ abused his discretion when he denied Petitioner's bond request. As displayed in the hearing transcript, the Respondents did not present any evidence of Petitioner being a danger to the community as he had no criminal history. ECF No. 10-2 at 7 ("I do not see any criminal history for this respondent and I don't see any factors pointing to his possibly being a danger to the community."). When asked about flight risk considerations, Respondents only mentioned Petitioner's entrance into the

26-cv-02335-GPC-MMP

country without inspection. *Id*. However, a "noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond…given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status." *Alvarado Lopez v. Dillman*, No. 25-cv-2456-LMB-LRV, 2026 WL 688958, at *6 (E.D. Va. Mar. 11, 20026). Thus, the Respondent also did not provide clear and convincing evidence that Petitioner was a flight risk.

Additionally, based on the transcript, it seems the IJ attempted to place the burden on Petitioner by querying Petitioner's counsel about the background of Petitioner's sponsor and spotlighting areas where there was an absence of evidence. ECF No. 10 at 7. While the IJ may consider a sponsor's reliability, *Matter of Dobrotvorskii*, 29 I&N Dec. 211, 211 (BIA 2025), Respondents did not present any clear or convincing evidence that Petitioner's sponsor was unreliable, such that Petitioner posed a flight risk, throughout the bond hearing.

In sum, Respondents provided no relevant evidence that Petitioner was a flight risk and a danger to the community in light of the *Guerra* factors. The IJ thus abused his discretion by ignoring Respondent's lack of clear and convincing evidence, placing the burden on Petitioner and his evidence, and denying bond. The IJ's misapplication of the legal standard violated Petitioner's due process rights and was legally insufficient. *See Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012) ("[D]ue process requires [an] IJ to consider the relevant evidence[.]").

## IV.    Relief Due

Having determined that Petitioner's bond hearing was legally and constitutionally inadequate, the Court considers what relief Petitioner is due. Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release—*see Soriano*, --- F. Supp. 3d. ---, 2026 WL 969764, at *6; *W.T.M.*, 2026 WL 22583, at *5; *Miri*, 2026 WL 622302, at *11; *Garcia*, --- F. Supp. 3d ---, 2025

26-cv-02335-GPC-MMP

WL 3466312, at *11—or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing—*see Kharis*, 2018 WL 5809432, at *11; *Lemus Crispin*, 2026 WL 768859, at *7; *S.E. v. Noem*, No. 1:26-CV-00356-DAD-SCR, 2026 WL 836327 (E.D. Cal. Mar. 26, 2026); *N.A.*, 2026 WL 734587, at *9.

Under these circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, --- F. Supp. 3d. ---, 2026 WL 969764, at *6.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the petition and ORDERS as follows:

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal belongings) within forty-eight (48) hours under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5. Respondents may not redetain Petitioner without compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231.

2. Respondents are enjoined from relocating Petitioner outside of the Southern District of California pending final resolution of this matter.

3. Within forty-eight (48) hours of this order, Respondents SHALL file with the Court a declaration confirming Petitioner has been released from custody and a copy of the conditions of supervision.

**IT IS SO ORDERED**.

Dated:  May 19, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-cv-02335-GPC-MMP